796 A.2d 139

**Antoinette DOW, A Minor, etc. et al.**

v.

**L & R PROPERTIES, INC. et al.**

**No. 2311, Sept. Term 2000.**

Court of Special Appeals of Maryland.

April 11, 2002.

Suzanne C. Shapiro (Saul E. Kerpelman & Associates, P.A. on the brief), Baltimore, for appellants.

No Brief or Appearance by appellee's Counsel.

Argued before SALMON, ADKINS and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

SMITH, Judge.

Appellants Antoinette Dow, a minor, and her mother, Annette McRae, resided in a rental property managed by appellee L & R Properties, Inc. ("L & R"). Appellants sued L & R

after Dow allegedly suffered injuries from ingesting lead-based paint inside the home.[1] The Circuit Court for Baltimore City granted summary judgment in L & R's favor on the ground that there was no evidence that any paint on the property contained lead.

## ISSUE

In this appeal, appellants seek to revive their case against L & R.[2] They argue, in essence:

> The trial court erred in granting L & R's motion for summary judgment, in that the record contains circumstantial evidence from which a trier of fact could infer the presence of lead-based paint.

We find merit in appellants' argument. Therefore, we shall vacate the judgment of the trial court and remand the case to that court for further proceedings.

## FACTS

Appellants' complaint alleged that Dow was born in December of 1986 and that she lived with McRae in an apartment at 1237 Myrtle Avenue, the property managed by L & R. It further alleged that the interior walls of the apartment were painted with lead-based paint that was chipping and flaking. According to the complaint, Dow ate chips of the lead-based paint and, in October of 1988, became "seriously, painfully and permanently injured, ill and [infirm] in head, body and limbs...."

---

1. Appellants also named Stephen F. Sparr t/a Sparr Enterprises, the owner of the property, as a defendant in the suit. Sparr was never served with the complaint and thus was not made a party to the suit. *See, e.g., Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 671–72 n. 18, 766 A.2d 617, 622 (2001) (where an owner of a rental property was one of several defendants sued in connection with damages from the ingestion of lead-based paint, but the owner was never served with the complaint, the owner was not a party to the suit and the case properly proceeded against the other defendants).

2. L & R neither filed a brief in this appeal nor presented oral argument.

L & R moved for summary judgment. It argued that, although appellants alleged in their complaint that lead-based paint on the premises caused injury to Dow, there was "no evidence that lead based paint existed on the premises in question." In a memorandum filed in support of its motion, L & R asserted:

The Plaintiffs have identified no expert to testify that lead paint existed on the premises.... No expert was identified to testify regarding any lead inspection or testing of the premises....

Defendant L & R requested in its Request for Production of Documents "Any and all correspondence or other documents received from any agency of the City of Baltimore or the State of Maryland concerning the existence of lead paint on the premises, *i.e.*, 1237 Myrtle Avenue." ... The Plaintiffs responded "None at this time." ...

Further, although the Plaintiffs obtained an Order of this Court, permitting entry upon the premises for the purpose of testing for the presence of lead based paint, ... the Plaintiffs never conducted the testing. Without any evidence that the paint within the premises contained lead, the Plaintiffs are unable, as a matter of law, to meet even a *prima facie* burden on the issue of causation.

Appellants responded to L & R's motion for summary judgment by asserting, and presenting evidence, that the property "has been in existence since at least 1935," and by arguing that there is a statutorily-created evidentiary presumption that "pre 1950 housing contains lead paint." [3] Appellants attached to their response, *inter alia*, their answers to interrogatories propounded by L & R. Appellants asserted in their answers to interrogatories that: they lived at 1237 Myrtle Avenue from February of 1987 until November of 1991; the property contained chipping and peeling lead-based paint that continued to deteriorate throughout the tenancy; appellant McRae and her sister "would call [the] office of L &

---

**3.** *See generally* Md.Code (1982, 1996 Repl.Vol., 2001 Cum.Supp.), §§ 6–801 and 6–852 of the Environment Article.

R Properties, to complain about the deteriorated and chipping paint," and "these complaints were made months before [McRae] ever learned that Antoinette Dow had lead poisoning"; and Dow spent "the majority of her time" in the apartment, "had a habit of placing her hands [and] fingers in her mouth," and "would often play at or near areas of chipping and peeling paint...."

L & R filed a reply memorandum to appellants' response to the motion, by which it disputed that there is an evidentiary presumption that houses built prior to 1950 contain lead-based paint. It again asserted that it was entitled to summary judgment as a matter of law. Appellants then filed a reply to the reply. They asserted that, even if no presumption exists, there was sufficient circumstantial evidence that the paint contained lead to defeat the motion.

A hearing was held on the motion, and the trial court granted summary judgment in L & R's favor on the ground that there was no evidence that the apartment contained lead-based paint. The court subsequently granted appellants' motion to alter or amend judgment, however, and scheduled a second hearing on the motion for summary judgment.

The second hearing was held before a different judge. This time, the court denied the motion for summary judgment. L & R moved for reconsideration, and appellants filed a response to the motion for reconsideration, to which they attached an affidavit signed by McRae. In her affidavit, McRae asserted, *inter alia:*

> Antoinette Dow resided at the premises 1237 Myrtle Avenue, 2nd floor[,] from the time she was two months old in February of 1987 through November of 1991 when Antoinette was almost five years old. Antoinette Dow did not reside at any other residences during this period of time. Antoinette Dow did not visit or spend overnights at any other residences during this period of time.

McRae stated in the affidavit that, during this time, she "often observed Antoinette Dow with white chips of paint on her lips, inside her mouth and on the tips of her fingers. These paint

chips came from the windowsills, woodwork, walls and doors of our 2nd floor apartment. . . . " She added:

Antoinette Dow has no contact with old battery casings, lead figures, naval paint, bullets, fishing weights, ceramic pottery, folk medicine or any other source of lead to my knowledge during the time she had elevated blood lead levels. She did not live near a processing plant and never played in any dirt outside of our home during this time.

The court granted the motion for reconsideration and held yet another hearing on the motion for summary judgment. At the close of the hearing, the court entered summary judgment in L & R's favor. The court explained: "The question before this Court . . . is whether there is evidence on the record before the Court of lead-based paint on the subject property." It observed: "The property was not, has never been tested for lead-based paint. There has never been, at least based on the record before this Court, a violation notice addressing the issue of lead-based paint on the property." The court concluded by stating: "The court believes, based on the record before it, that it would be improper to submit this question to a finder of fact[,] to a jury. The Court believes that it would be pure speculation without having any evidence of lead-based paint on the property."

## STANDARD OF REVIEW

■ A trial court "shall enter [summary] judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). In reviewing a grant of summary judgment, this Court is "concerned with whether a dispute of material fact exists. . . . 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.'" *Jones v. Mid Atlantic Funding Co.*, 362 Md. 661, 675, 766 A.2d 617, 624 (2001) (citations omitted).

■ "The function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but

to determine whether there is a dispute as to a material fact sufficient to provide an issue to be tried." *Berkey v. Delia,* 287 Md. 302, 304, 413 A.2d 170, 171 (1980). Significantly, "[a]ll inferences must be resolved against the moving party when a determination is made as to whether a factual dispute exists." *Id.* at 304–05, 413 A.2d at 171.

> On a motion for summary judgment, the evidence, including all inferences therefrom, is viewed in the light most favorable to the nonmoving party.... If the facts presented to the trial court on a motion for summary judgment are susceptible to more than one inference, the inference must be drawn in the light most favorable to the person against whom the motion is made, and in the light least favorable to the movant.

*Jones,* 362 Md. at 676, 766 A.2d at 625 (citations omitted).

## DISCUSSION

As we have explained, in moving for summary judgment L & R asserted that there was no evidence of lead-based paint at 1237 Myrtle Avenue. L & R thus implicitly argued that any alleged dispute as to the existence of lead-based paint was not *genuine.* L & R reasoned that, without evidence that would generate a genuine dispute as to whether the peeling and chipping paint at 1237 contained lead, appellants could not establish that Dow's ingestion of paint chips at the home *caused* her alleged injuries. From this, L & R concluded that it was entitled to summary judgment as a matter of law. L & R advanced no other ground for summary judgment.

Appellants concede that there was no *direct* evidence of lead-based paint at 1237 Myrtle Avenue. They contend, however, that an evidentiary presumption that rental homes built prior to 1950 contain lead-based paint has been created by Maryland's lead poisoning prevention laws. *See generally* Code (1982, 1996 Repl.Vol., 2001 Cum.Supp.), §§ 6–801–6–852 of the Environment Article.[4] Appellants suggest that, once a

---

4. Appellants also assert that the Secretary of the Department of Housing and Urban Development "promulgated a regulation creating a

plaintiff in a lead paint case presents evidence that the dwelling was built before 1950, the burden shifts to the defendant to prove that the dwelling did not contain lead-based paint. In the alternative, appellants assert that even if no presumption exists, they offered sufficient circumstantial evidence that the paint was lead based to survive L & R's summary judgment motion.

▮ Because we are convinced that appellants' alternative argument has merit, we perceive no need at this juncture to address the argument regarding the existence of a statutorily-created evidentiary presumption. We observe only that, although the owner of any residential rental property in Maryland that was constructed before 1950 is required by statute, upon a change of occupancy, to take certain lead paint risk reduction measures or to obtain certification that the property is free of lead-based paint, *see* §§ 6–801(b), 6–803, 6–804, and 6–815 of the Env. Art., no statutory provision expressly creates an evidentiary presumption. Neither the Court of Appeals nor this Court has ever interpreted the statutes regarding lead-based paint to create such a presumption. To the contrary, this Court has commented, in *dicta*, "Obviously, the mere fact that most old houses in Baltimore have lead-based paint does not mean that a particular old Baltimore house has a similar deficiency." *Davis v. Goodman*, 117 Md.App. 378, 393, 700 A.2d 798, 805 (1997).

▮ In any event, the circumstantial evidence presented by appellants in response to the motion for summary judgment was sufficient, even without the aid of an evidentiary presumption, to generate a genuine dispute as to material fact and thus to defeat the motion. Viewing the circumstantial evidence and the inferences that could be drawn therefrom in the light most

presumption that any defective paint in a house built before 1950 was an immediate lead paint hazard." In support of this assertion, appellants direct us to 24 CFR § 35 (2001). Section 35 of Title 24 has 102 subsections, and appellants do not specify precisely which subsection creates the purported presumption. We have reviewed § 35 in its entirety and have detected no so-called presumption that would impact upon this State's laws of evidence.

favorable to appellants as the non-moving party, we are satisfied that appellants could properly establish that the paint in question was lead based and thus caused Dow's alleged injuries.

 There is no requirement that, in a negligence suit, "the matter of causation . . . be proved by direct and positive proof to an absolute certainty." *Otis Elevator Co. v. LePore*, 229 Md. 52, 57, 181 A.2d 659, 662 (1962). Circumstantial evidence may support a negligence determination if it "amount[s] to a reasonable likelihood or probability rather than a possibility." *Peterson v. Underwood*, 258 Md. 9, 17, 264 A.2d 851, 855 (1970). Indeed, " 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury' . . . ." *N.B.S., Inc. v. Harvey*, 121 Md.App. 334, 342, 709 A.2d 162, 166 (1998) (citation omitted). Of course, "causation evidence that is wholly speculative is not sufficient." *Lyon v. Campbell*, 120 Md.App. 412, 437, 707 A.2d 850, 863 (1998).

Appellants attached to their response to L & R's motion for summary judgment a certified document of the Baltimore City Department of Public Works that indicated that the dwelling at 1237 Myrtle Avenue was in existence as early as 1935. In addition, appellants attached Baltimore City Health Department documents reflecting that Dow was diagnosed with lead poisoning. They attached appellants' own answers to interrogatories, in which they asserted, in pertinent part, that Dow had lived at 1237 Myrtle Avenue from the time she was two months old until after she was diagnosed. In response to L & R's later-filed motion to reconsider the denial of the motion for summary judgment, appellants submitted to the court, *inter alia*, McRae's affidavit, in which McRae stated that Dow spent virtually all of the relevant time at 1237 Myrtle Avenue and could not have been exposed to lead anyplace else.

In moving for summary judgment, L & R did not dispute that there was evidence that the dwelling was built prior to 1950, that such dwellings often contain lead-based paint, that

Dow ate paint chips in the dwelling, or that Dow was diagnosed with lead poisoning. L & R has never disputed that appellants could present evidence that L & R had notice of the chipping and peeling paint and thus had a duty to correct the problem. *See generally* Housing Code of Baltimore City (1997 ed.), §§ 702 (requiring that dwellings be kept in "good repair"), 703(2)(c) (requiring that interior walls, ceilings, woodwork, doors and windows be kept "free of any flaking, loose or peeling paint"); *Brown v. Dermer,* 357 Md. 344, 358–71, 744 A.2d 47, 55–62 (2000) (explaining that a violation of § 702 or § 703 of the Housing code may form the basis of a lead paint negligence action against a landlord if the landlord had reason to know of the flaking, loose, or peeling paint, and it is no defense that the landlord was unaware that the paint was lead-based or of the dangers of lead-based paint); *Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 671–72, 645 A.2d 1147, 1151–52 (1994) (also explaining that violation of city code provisions regarding lead paint may form the basis of a private tort action). As we have indicated, L & R advanced as a ground for summary judgment only that there was no evidence that the paint in the dwelling was lead-based paint.

If believed, the evidence offered by appellants in opposition to the motion for summary judgment could establish that the chipping and peeling paint inside 1237 Myrtle Avenue was the only possible source of Dow's lead poisoning. McRae's affidavit indicates that Dow did not spend time anywhere else and was never exposed to any other sources of lead. That, coupled with the undisputed fact that homes built before 1950 often contain lead-based paint, could indeed support an inference that the paint in question contained lead. *Compare Davis,* 117 Md.App. at 393, 700 A.2d at 805 (where there was no indication that the plaintiffs resided exclusively at the dwelling in question and could not have been exposed to lead elsewhere, this Court commented in *dicta* that, had plaintiffs not presented evidence in affidavits filed after the filing of the initial motion for summary judgment, to the effect that the paint in the rental property owned by defendant contained lead, summary judgment in defendant's favor would have been

proper); *Webb v. Joyce Real Estate, Inc.*, 108 Md.App. 512, 517 n. 2, 672 A.2d 660, 662 n. 2 (1996) (where this Court determined that trial court properly granted summary judgment in defendant's favor on ground that defendant had no notice of flaking paint, but stated in *dicta* that trial court could have granted summary judgment in defendant's favor where plaintiff "offered no evidence of the presence of lead-based paint" and plaintiffs were diagnosed with lead poisoning several weeks after moving from premises); *Bartholomee v. Casey*, 103 Md.App. 34, 40, 58, 651 A.2d 908, 911, 919–20 (1994) (evidence was insufficient to support finding of negligence on part of rental property owners where plaintiff failed to present evidence that property had been tested for lead-based paint, evidence indicated that plaintiff had been exposed to lead-based paint at other locations, and plaintiff failed to establish that defendant was made aware of flaking paint), *cert. denied*, 338 Md. 557, 659 A.2d 1293 (1995).

Under the circumstances, the trial court erred in granting the motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY THE COSTS.**