66 A.3d 1145

**Dominique WEST**

v.

**Stanley ROCHKIND et al.**

**No. 0041, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

May 30, 2013.

Brian Brown, (Saul E. Kerpelman & Associates, PA, on the brief), Baltimore, MD, for Appellant.

William C. Parler, (Kelly A. Grafton, Parler & Wobber, LLP, on the brief), Towson, MD, for Appellee.

Panel: KEHOE, WATTS and CHARLES E., MOYLAN JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

This case is about lead paint poisoning, but the appeal calls for us to analyze the use of the process of elimination to prove a necessary constituent element of lead paint poisoning. In order to infer backward from a subsequent effect to a particular antecedent cause by using the process of elimination, it is necessary for the proponent actually to eliminate all but one of the eligible causes. The process of elimination, as its name implies, demands some efficacious eliminating. A graphic illustration of the process of elimination in action is *Dow v. L & R Properties, Inc.,* 144 Md.App. 67, 796 A.2d 139 (2002), the case that is the fulcrum of this appeal.

We hasten to point out that our analysis in this case does not go to the ultimate proof of causation, but only to the use of the cause-and-effect relationship to infer a critical fact that enters into the ultimate question of causation.

## The Case Before Us

In this lead paint case, the Circuit Court for Baltimore City granted summary judgment in favor of the appellees, NBS, Inc., and Stanley Rochkind, who owned and operated a residential property, 1814 Lorman Street, from May 4, 1990, through June of 2001. The appellant, Dominique West ("Dominique"), alleged that he sustained injury from having ingested lead paint while living with his grandparents at 1814 Lorman Street from his birth in 1989 through February 10, 1992.

The case was necessarily based on circumstantial evidence because no lead paint tests were ever conducted on 1814 Lorman Street and the property has since been razed. Answers to interrogatories and deposition testimony by Dominique's mother, Yarrell Duppins, revealed that Dominique either resided or spent substantial amounts of time at a variety of different residences during the first six years of his life—including 1814 Lorman Street, 428 Cummings Court, 1311 Ballard Way, and 2696 Aisquith Street. Judge Lawrence P. Fletcher–Hill ultimately ruled that Dominique had not made out a prima facie case of negligence against the appellees. He reasoned that, given Dominique's uncertain residential history and the lack of any direct evidence that 1814 Lorman Street ever contained lead paint, Dominique could not point to 1814 Lorman Street as the source of his lead poisoning. We agree with Judge Fletcher–Hill and, for the following reasons, shall affirm the judgment of the circuit court.

## A Chaotic Residential History

Dominique was born prematurely, at 29 weeks, on June 28, 1989. He weighed two-and-a-half pounds at birth. The evidence as to precisely where Dominique lived for the first six years of his life was ambiguous in the extreme. Dominique exhibited elevated blood lead levels in capillector screening tests performed on August 21, 1990, December 19, 1990, and March 11, 1991. Of present pertinence is that those test results all listed Dominique's address as 1814 Lorman Street. Dominique also exhibited elevated blood lead levels in capillec-

tor screening tests performed on January 21, 1992 and August 5, 1992, and in a confirmatory venipuncture test performed on April 22, 1992. Those test results all listed Dominique's address as 428 Cummings Court. In answers to interrogatories signed by Dominique, he provided the following peripatetic residential history:

Birth–1992: 1814 Lorman Street

1992–1994: 1311 Ballard Way

Birth–1995: 428 Cummings Court

1994–1995: ? ? ? Lakebrook Circle

1995–Present: 2696 Aisquith [Street]

In a deposition taken on March 3, 2011, Dominique's mother, Yarrell Duppins, testified that she resided at 1627 Appleton Street at the time Dominique was born. When asked whether "anybody else live[d] there besides you, Willie West, Helen Brown, and after he was born, Dominique?" she replied "No." Later in the deposition, however, she testified that her son, Dominique, went to stay with his grandparents (her mother and father) at 1814 Lorman Street "immediately after birth from the hospital." For the first 11 months of Dominique's life, however, the appellees were not yet the owners of 1814 Lorman Street.

Yarrell Duppins also testified that her parents, Ethel and Calvin Duppins, were awarded legal custody of Dominique when he was four years old, i.e., in 1993 or 1994. That assumption of legal custody, however, only occurred after the Duppinses had moved away from 1814 Lorman Street. Ethel Duppins leased 1814 Lorman Street from some time before Dominique was born until she moved out on February 10, 1992. In an earlier deposition, taken on November 11, 2009, moreover, Yarrell Duppins had testified that, "most of the time," when she was living at various other addresses, including 1627 Appleton Street, 428 Cummings Court, 2430 Druid Hill Avenue, and 1311 Ballard Way, she would provide her parents' address (1814 Lorman Street) instead of her own when seeking medical treatment.

Dominique was evaluated at the Kennedy Krieger Institute for behavioral problems in August of 1998, when he was nine years old. By that point, Dominique's legal guardian was his grandmother, Ethel Duppins. The Kennedy Krieger report states: "Dominique has been living with the Duppins [his grandparents] since the age of five. Prior to that period, he had lived with his mother." That report effectively excluded 1814 Lorman Street as a place of residence, for by the time that Dominique was five his grandparents had moved away from Lorman Street. Over the span of 20 years, of course, memories inevitably had dimmed. Above and beyond the memory problem, however, the living arrangements for the infant Dominique appear to have been haphazardly pillar to post.

### Summary Judgment

Rochkind and NBS filed a motion for summary judgment on December 9, 2011; Dominique responded on December 29, 2011. In opposing summary judgment, Dominique freely acknowledged that no test for lead paint had ever been done at 1814 Lorman Street and that no direct evidence, therefore, existed to identify that address as a source of Dominique's lead paint exposure. Dominique argued, however, that, even in the absence of direct evidence, circumstantial evidence can suffice to establish the site of the exposure. His primary reliance for that proposition was on *Dow v. L & R Properties.* In Dow, to be sure, the identification of the situs of the lead paint exposure had been based exclusively on circumstantial evidence.

Judge Fletcher–Hill held a hearing on February 10, 2012, and orally granted summary judgment in favor of NBS and Rochkind. He explained:

> *Because in this case there is no direct evidence of whether the property at 1814 Lorman contained lead based paint or not, the only basis on which the plaintiff could proceed would be a Dow-like circumstantial theory. Dow* certainly doesn't articulate the only circumstances in which there might be circumstantial proof of lead exposure. But *the*

*critical fact in Dow was that the plaintiff could establish that the property at issue was the exclusive possible place where the plaintiff was exposed to lead* and therefore, that, combined with the age of the property and the high blood lead levels of that plaintiff amounted to *a sufficient circumstantial case for exposure at that property and therefore the existence of lead based paint at that property.*

Here, however, *the plaintiff's own statements* in interrogatory answers *establish two different places of residence or substantial visitation* during the period from birth to 1992 where *he specifies living at 1814 Lorman Street and spending a lot of his time at 428 Cummings Court.* So the conclusion available to a plaintiff in *Dow* is not available to this plaintiff *by his own statements* because *he has created the possibility of two different locations as the possible source of his exposure* during that period.

If I had concluded ... that in fact the confusion in this case was over sequential residences, then that would be a very different matter. Because in that case, the plaintiff would have shown that during a particular period, if he did live at Lorman Street, that was the only place that he might have been exposed. But ... based on his interrogatory answer, that is not the case. And therefore, *Dow* is not available to him.

On that basis, I find that as a matter of the undisputed facts, though there are many factual discrepancies here, but based on the best view of the facts for the plaintiff on his own interrogatory answers, *he has failed to make a prima facie case for a negligence case based on 1814 Lorman Street.* And I will therefore grant summary judgment.

(Emphasis supplied). Judge Fletcher–Hill confirmed his ruling in a written order entered on February 13, 2012. Dominique is appealing from that grant of summary judgment.

## Circumstantial Evidence and Its Limitations

In Dominique's view, he produced more than enough evidence, based on his reading of *Dow,* to get to a jury on the question whether the paint at 1814 Lorman Street contained

lead. He contends that Judge Fletcher–Hill erred as a matter of law by requiring that he show that 1814 Lorman Street was the "exclusive possible place of exposure" in order to make out a prima facie circumstantial case of negligence. He maintains that he was only required to show that 1814 Lorman Street was *a* cause, not *the only* cause, of his lead paint poisoning. In a general sense that may be true, but he cannot even show that it was *a* cause, in the absence of any lead paint testing, without showing that it was the only possible explanation for Dominique's lead poisoning. In this unusual "Catch 22" scenario, Dominique must show, in the absence of any direct or other efficacious circumstantial evidence of lead paint, that 1814 Lorman Street was *the only* cause for the medical effect even to prove that 1814 Lorman Street was a cause of lead poisoning.

The appellees agree that a plaintiff may prove a negligence case using only circumstantial evidence if that evidence creates "a reasonable likelihood or probability" of negligence, rather than a mere possibility of negligence. The appellees contend that our holding in *Dow* rested on the critical undisputed fact that the plaintiff had lived nowhere else but at the subject property and could not have been exposed to lead elsewhere. The appellees agree that multiple actors may be liable for multiple acts of negligence that separately contribute to a plaintiff's injury, but maintain that a plaintiff must still put forth sufficient evidence to make out a prima facie case of exposure at each alleged source. The appellees reject Dominique's assertion that it was up to them to show another source of lead exposure. They point to deposition testimony by Dominique's own expert witness, Michael Weitzman, M.D., opining that 1814 Lorman Street, 428 Cummings Court, 1311 Ballard Way, and 2696 Aisquith Street were all sources of Dominique's lead exposure between his birth and the age of seven.

■ There is no dispute that a negligence case may be proven using only circumstantial evidence, so long as it creates "a reasonable likelihood or probability rather than a possibili-

ty" supporting a "rational inference of causation," and is not "wholly speculative." See *Lyon v. Campbell*, 120 Md.App. 412, 437, 707 A.2d 850 (1998) (citing *Myers v. Bright*, 327 Md. 395, 399, 609 A.2d 1182 (1992); *Peterson v. Underwood*, 258 Md. 9, 17–18, 264 A.2d 851 (1970); *Otis Elevator Co. v. LePore*, 229 Md. 52, 57, 181 A.2d 659 (1962)).

We are not proposing the process of elimination as a necessary standard of proof on the ultimate issue of tortious liability. We are dealing, rather, with an instance where the use of the process of elimination was required to establish a constituent fact which is a necessary part of that circumstantial evidence. We are not juxtaposing 1) exclusivity demanded by the process of elimination with 2) probability established by circumstantial evidence as opposing standards of proof. The exclusivity required to infer a cause from an effect comes into play only to establish one of the factors that, if established, may then enter into the circumstantial mix. For an excellent discussion of the very different issue of proving ultimate causation in a lead paint case, see the opinion of Judge McDonald for the Court of Appeals in *Ross v. Housing Authority of Baltimore City*, 430 Md. 648, 667–72, 63 A.3d 1 (2013).

The pivot on which this case turns is *Dow*. In *Dow*, this Court held, on the specific facts of that case, that the plaintiff had produced sufficient circumstantial evidence to create a genuine dispute of material fact as to whether the subject property contained lead and, thus, to defeat the defendant's motion for summary judgment, even without direct proof of lead in the form of lead tests conducted on the property. We summarized the facts, in the light most favorable to the plaintiff, as follows:

> Appellants attached to their response to L & R's motion for summary judgment a certified document of the Baltimore City Department of Public Works that indicated that *the dwelling at 1237 Myrtle Avenue was in existence as early as 1935*. In addition, appellants attached Baltimore City Health Department documents reflecting that *Dow was diagnosed with lead poisoning*. They attached appellants'

own answers to interrogatories, in which they asserted, in pertinent part, that *Dow had lived at 1237 Myrtle Avenue from the time she was two months old until after she was diagnosed.* In response to L & R's later-filed motion to reconsider the denial of the motion for summary judgment, appellants submitted to the court, inter alia, McRae's affidavit, in which McRae stated that *Dow spent virtually all of the relevant time at 1237 Myrtle Avenue and could not have been exposed to lead anyplace else.*

144 Md.App. at 75, 796 A.2d 139 (emphasis supplied).

In *Dow,* as in this case, there was no direct evidence that lead paint had been present at the suspect residence. The indispensable circumstantial evidence in *Dow,* however, was that the process of elimination showed ineluctably that Myrtle Avenue had to have been (not could have been, but had to have been), a place containing lead paint. The young plaintiff's medical diagnosis showed indisputably that she had been exposed to lead paint. The evidence showed indisputably that the only place where she could have been exposed to lead paint was at Myrtle Avenue. There was only one possible cause for the undisputed effect. By process of elimination, there was no other possible source of exposure. That, we held, constituted solid circumstantial evidence that the house contained lead paint:

> If believed, the evidence offered by appellants in opposition to the motion for summary judgment could establish that the chipping and peeling paint inside *1237 Myrtle Avenue was the only possible source of Dow's lead poisoning.* McRae's affidavit indicates that *Dow did not spend time anywhere else and was never exposed to any other sources of lead.* That, coupled with the undisputed fact that homes built before 1950 often contain lead-based paint, could indeed support *an inference that the paint in question contained lead.*

*Id.* at 76, 796 A.2d 139 (emphasis supplied). In this case, in stark contrast to *Dow,* there was no such process of elimination at work.

In *Dow*, two analytic steps were conflated into one. The plaintiff had first to show that there was lead in the paint at Myrtle Avenue. The plaintiff had then to show that his exposure at Myrtle Avenue was an effective cause of his lead poisoning. The same exclusivity answered both questions. That mutuality of impact, however, should not obscure the fact that there was still involved a two-step analytic process, and that what may be said about one step in that analytic process does not necessarily apply to the other step. The proof of ultimate causation does not demand exclusivity. To infer the existence of an antecedent cause from its subsequent effect, on the other hand, does demand exclusivity and that is what Dominique failed to show.

We revisited and relied on Dow in *Taylor v. Fishkind*, 207 Md.App. 121, 51 A.3d 743 (2012), *cert. denied*, 431 Md. 221, 64 A.3d 497 (2013). The plaintiff in *Taylor* alleged that she had been exposed to lead paint while living at 2320 Riggs Avenue between 1990 and 1993 and, subsequently, at 1025 North Carrollton Avenue between 1993 and 1994. She exhibited elevated blood lead levels while living at both addresses. The plaintiff did not submit any lead test results for 2320 Riggs Avenue. The trial court denied the Riggs Avenue defendants' motion for summary judgment on the ground that there was sufficient circumstantial evidence for a jury to conclude that the plaintiff had been exposed to lead there. The plaintiff and the Riggs Avenue defendants later reached a settlement.

The plaintiff did submit test results showing that lead paint was present on an exterior window apron of 1025 North Carrollton Avenue. The interior of 1025 North Carrollton Avenue was not tested. The trial court later excluded testimony by the plaintiff's medical expert and also granted summary judgment in favor of the Carrollton Avenue defendants.

This Court held that the trial court did not abuse its discretion in excluding the plaintiff's expert's testimony, because it lacked a sufficient factual basis. The expert was unable to conclude that the plaintiff's blood lead level rose while living at the Carrollton Avenue property and was unable

to rule out other sources of lead, such as the Riggs Avenue property, and there was "scant evidence" that areas of the Carrollton Avenue property that were accessible to the plaintiff actually contained lead. 207 Md.App. at 142, 51 A.3d 743. The expert could not determine whether the plaintiff's blood lead levels rose when she moved to the Carrollton Avenue property because she had not been tested shortly before or after the move. *Id.* at 145, 51 A.3d 743. The expert "conceded in her deposition that [the plaintiff]'s elevated blood lead level at [the Carrollton Avenue address] could have been the result of lead that was already in her body from a source prior to when she moved to [Carrollton Avenue]." *Id.* at 146, 51 A.3d 743.

In affirming the grant of summary judgment against the plaintiff, we held that her attempt to build a circumstantial case for lead paint at Carrollton Avenue did not have the benefit of the process of elimination because of her inability to eliminate Riggs Avenue as a possible alternate source of exposure. In rejecting her reliance on *Dow,* we characterized *Dow* as holding that

"[i]f believed, the evidence offered by [plaintiffs] in opposition to the motion for summary judgment could establish that the chipping and peeling paint inside [the subject property] was *the only possible source* of [plaintiff's] lead poisoning."

*Id.* at 145, 51 A.3d 743 (emphasis in *Taylor*). We emphasized the failure of the plaintiff in *Taylor* to eliminate all alternate sources of exposure:

Because [the plaintiff] claims that she was exposed to lead-based paint at two properties, a similar evidentiary *showing is insufficient to prove that [the Carrollton Avenue property] was the only possible source* of [the plaintiff]'s elevated blood lead level. Here, *the evidence is inconclusive as to the source of [the plaintiff]'s lead exposure.* It is entirely possible from the evidence presented that [the plaintiff] was exposed to lead-based paint at [Riggs Avenue] and not at [Carrollton Avenue]. *The affidavit provided by*

*[the plaintiff]'s mother,* if believed, eliminates other residences where [the plaintiff] stayed as possible lead sources, but it *does not eliminate [the Riggs Avenue property] as a possible lead source.* Furthermore, [the plaintiff's expert] conceded in her deposition that [the plaintiff]'s elevated blood lead level at [Carrollton Avenue] could have been the result of lead that was already in her body from a source prior to when she moved to [Carrollton Avenue]. Therefore, more is required to support [the plaintiff's expert]'s opinion that [the plaintiff] was exposed to lead-based paint at [the Carrollton Avenue property] because, *unlike in Dow, [the plaintiff] could not rule out all other sources for her lead exposure.*

*Id.* at 146, 51 A.3d 743 (emphasis supplied).

■ A lead paint plaintiff may, of course, establish a prima facie case of negligence based solely on circumstantial evidence. In a case such as this, however, where there was no direct evidence that 1814 Lorman Street even contained lead paint, Dominique may only rely on that critical fact, as a necessary part of his circumstantial evidence, if he can show by the process of elimination that 1814 Lorman Street was the only possible cause for the critical effect of lead poisoning. We may only infer the existence of lead paint at Lorman Street from Dominique's condition if lead paint at Lorman Street is shown to have been the only possible explanation for Dominique's condition.

The distinction that Dominique fails to grasp is a subtle one; it is nonetheless a critical one. In Dominique's forensic syllogism, his conclusion of ultimate liability does not, to be sure, depend upon the exclusivity of 1814 Lorman Street as a source of his lead poisoning. Lorman Street could readily share liability with two or three other places of exposure. That, however, is not the point. Before even getting to a syllogism's conclusion, one must first establish the premises out of which the conclusion arises. A necessary premise in this case is that there was, indeed, lead paint at 1814 Lorman Street. It is with respect to that antecedent premise, not with

respect to the ultimate conclusion, that the lack of exclusivity is Dominique's Waterloo. It is the teaching of *Dow* that, even in the absence of direct proof, the presence of lead paint at a particular site can be inferred by the process of elimination, but only if we have 1) the effect of lead poisoning in the plaintiff and 2) the fact that the site in question was the exclusive possible source of the plaintiff's lead paint exposure. It was the truth of that premise that Dominique failed to establish in this case, not the validity of the conclusion proceeding from the premises. Exclusivity was not required at B. It was required at A, before one even gets to B.

The essential underpinning of our holding in *Dow* was that the plaintiff "spent virtually all of the relevant time at 1237 Myrtle Avenue and could not have been exposed to lead anyplace else." 144 Md.App. at 75, 796 A.2d 139. Thus, Dow established that lead paint was present at Myrtle Avenue. With that premise established, the ultimate proof of causation was simple.

Similarly, in *Taylor*, we explained that a *Dow*-based circumstantial evidence theory was unavailable "because, unlike in *Dow*, [the plaintiff] could not rule out all other sources for her lead exposure." 207 Md.App. at 146, 51 A.3d 743. Thus Taylor had failed to establish that Carrollton Avenue even contained lead paint. With the failure to establish that premise, the proof of ultimate causation was fatally doomed.

## CONCLUSION

At best, Dominique can show that he may have been exposed to lead at any or all of the three or four residences where he spent substantial time as a child. By definition, that does not trigger the process of elimination, and he thereby failed to establish the threshold premise that lead was even present in the paint at Lorman Street. Under those circumstances, whether he spent a significant amount of time or only a negligible amount of time or no time at all at Lorman Street was immaterial, because he failed to establish the necessary

premise on which the ultimate conclusion of probable causation logically depended.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.**