**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1152

September Term, 2014

_____

PATRICE BARR

v.

STANLEY ROCHKIND, et al.

---

Meredith,
Berger,
Leahy,

JJ.

---

Opinion by Meredith, J.

---

Filed: September 29, 2015

This appeal arises out of a lead paint action filed in the Circuit Court for Baltimore City by Patrice Barr, appellant, against the following appellees: Stanley Rochkind, JAM #16 Corporation, Charles Runkles, Uptown Realty Co., and Dear Management and Construction Company. Appellant alleges that she was exposed to lead-based paint while living in a rental property owned and managed by appellees. Appellees moved for summary judgment, arguing that appellant could not produce sufficient evidence to establish a *prima facie* case of negligence. The circuit court granted the appellees' motion, and this timely appeal followed.

## QUESTION PRESENTED

Appellant presented four questions for our review, which we have consolidated and rephrased as follows:[1]

---

[1] Appellant submitted the following questions for our review:

1.      Whether the trial court erred in granting Appellees' Motion for Summary Judgment?

2.      Whether the trial court erred and/or abused its discretion in denying Appellant's Motion for Reconsideration?

3.      Under *West*, Can a Plaintiff Prove Her Case Circumstantially — and Without Ruling Out Other Sources — Where Defendants Have Brought Forth No Evidence of Other Possible Sources, and Where the Totality of Facts Supports a Rational Inference of Causation?

4.      Under *Hamilton*, Can a Plaintiff Prove Her Case Circumstantially — and Without Ruling Out Other Sources — Where Defendants Have Brought Forth No Evidence of Other "Reasonably Probably Sources," and Where the Totality of Facts Supports a Rational Inference of Causation?

Did the circuit court err by granting appellees' motion for summary judgment?

Because we conclude that the circuit court did not err, we affirm the judgment of the Circuit Court for Baltimore City.

## FACTS & PROCEDURAL HISTORY

Appellant was born November 11, 1995. The record is unclear regarding appellant's residential history during her earliest years of life, but it is undisputed that, as a young child, appellant lived in several different houses in Baltimore, including the property known as 2027 Ridgehill Avenue, which was owned or managed by appellees. It is not clear precisely when appellant resided in each of her different homes, but appellant's mother represented to the circuit court that she and appellant moved to 2027 Ridgehill Avenue sometime in 2001 and resided there until sometime in 2003.

Between October 31, 1996, and April 1, 2002, appellant's blood was tested approximately annually for lead, and each test showed that her blood lead level was elevated. During that time span, appellant lived in at least two properties before moving to 2027 Ridgehill Avenue. The lead levels, as disclosed by the tests, peaked at 12 micrograms per deciliter on April 27, 1999, and then dropped to 8 micrograms per deciliter on February 25, 2000. When appellant's blood was tested for lead on January 17, 2001 — before her move to 2027 Ridgehill Avenue — the results showed that her blood contained 6 micrograms of lead per deciliter. The document reporting the results indicated that she was not living at

2

2027 Ridgehill Avenue at the time of that test in January 2001. In April 2002, a blood test revealed that her blood lead levels had risen to 8 micrograms per deciliter.

Although appellant apparently did not exhibit any developmental delays during early childhood, psychological tests performed on appellant at age 17 showed that her IQ is approximately 77 and that she suffers from "brain-related neuropsychological impairment" as a result of childhood exposure to lead.

On October 3, 2012, appellant and her mother, Penny Travers, filed a negligence suit against appellees, alleging that appellant was exposed to lead-based paint while living at 2027 Ridgehill Avenue.[2] In April 2013, appellees filed two motions for partial summary judgment. In the first motion, appellees argued that Travers's claims were barred by the statute of limitations. Neither appellant nor Travers opposed the first motion for summary judgment. In the second motion, appellees argued that there was insufficient evidence to demonstrate that appellees' property contained lead-based paint that caused appellant's injuries. Appellant opposed the second motion as to 2027 Ridgehill Avenue, and insisted that there was sufficient evidence to establish a *prima facie* case as to that property.

Appellant did not claim that she would be able to produce *direct* evidence that there was lead-based paint at 2027 Ridgehill Avenue, but she argued that the existence of lead-based paint could be reasonably inferred from circumstantial evidence, namely, that the

---

[2]The suit also asserted a claim relative to the appellees' property at 2135 Harford Road, but appellant has abandoned any claim based upon that property. For simplicity, we will refer to 2027 Ridgehill Avenue as the only property that is the subject of this appeal.

property contained deteriorated paint and was at least 90 years old at the time she lived there, combined with the fact that her observed blood lead levels increased by 33% while she was living there as a 5 to 7-year-old child. Appellant's opposition to the motion for summary judgment was supported by an affidavit from Travers that stated in relevant part:

3. Patrice resided with me at 2027 Ridgehill Avenue from approximately 2001 until approximately 2003.

4. During the time we resided at 2027 Ridgehill Avenue, I recall chipping peeling and flaking paint throughout the property in the windows, front door frame, bannister and around the tub in the bathroom.

5. Patrice would constantly put her fingers in her mouth and suck on them during the time we lived at Ridgehill Avenue.

6. Patrice would frequently play with her toys on the floor in the living room.

7. I recall that she would also put her toys in her mouth while she was playing.

The mother's affidavit did not state, however, whether appellant spent any of her waking hours at other properties during the period when she was living at 2027 Ridgehill Avenue, and the affidavit did not make any assertions that ruled out appellant's exposure to other potential sources of lead during the time period when she resided at the Ridgehill Avenue property.

Appellant's opposition to the motion for summary judgment also included an affidavit from Dr. Daniel Levy, a pediatrician with expertise in treating childhood lead poisoning. Dr. Levy had reviewed appellant's medical records, and opined that appellant's intellectual

4

impairments were caused, at least in part, by her exposure to lead-based paint at 2027 Ridgehill Road. The affidavit stated in part:

> 2.      I am a Pediatrician currently licensed to practice medicine in the State of Maryland. I have been involved in the prevention, diagnosis, treatment, and neurocognitive developmental follow up of childhood lead poisoning for over thirty years. See attached curriculum vitae further outlining my credentials.
>
> 3.      A treating doctor's duty in the case of a child with lead poisoning is to identify sources of lead exposure so that future exposure can be minimized and further damage to the child prevented. Because of this duty a doctor treating children with lead poisoning must make himself aware of possible sources of lead in general in the environment, as well as sources of lead specifically available to the child being treated. Within the medical community it is a well recognized role of the treating doctor to form an opinion of the likely sources of a child's lead exposure based upon research studies, practical experience and the specific facts in the specific child's case. Although it is very typical to see a whole laundry list of esoteric items which in theory could be the source of lead exposure — such as old battery casings, lead in gasoline, naval paint, bullets, fishing weights, ceramic pottery — **in almost 100% of cases the child's lead exposure turns out to be attributable to deteriorated paint in the home in which the child is living and has daily exposure, therefore, to lead paint chips and lead dust**.
>
> 4.      Figuring out where a child most likely got lead poisoning from is a process of elimination. If sources other than paint are eliminated a doctor can be confident to a reasonable degree of medical certainty that deteriorated paint is the child's source of lead exposure.
>
> 5.      **It is my opinion within a reasonable degree of medical probability that the premises 2027 Ridgehill Avenue contained lead-based paint during the time period Patrice Barr resided at 2027 Ridgehill Avenue from 2001 until 2003.** I base this opinion on the Property Card from the Baltimore City Department of Public Works, Property Location Section, showing that the residence was an old house in existence from at least 1920, and affidavit testimony stating that the property had chipping, peeling and flaking paint throughout, that Plaintiff frequently played on the floor in the property and that plaintiff had constant hand to mouth activity. I also base this opinion on my medical training, knowledge and experience, as well as

5

practical experience as a doctor who has treated hundreds of children for lead exposure and taught pediatric residents and medical students how to manage children diagnosed with lead poisoning, the fact that lead-based paint was banned by Baltimore City in 1950 and by the federal government in 1978, medical and environmental records and testimony I have reviewed, specific facts as to the instant children's [sic] case, as well as medical, scientific, and U.S. Governmental Studies accepted in the scientific community as authoritative and listed in Preventing Lead Poisoning in Young Children, A Statement by the United States Centers for Disease Control (1991).

* * *

Thus, based on the age of the house in existence since at least 1920, the condition of the house containing deteriorated paint, and the Plaintiff's elevated blood lead levels while residing at 2027 Ridgehill Avenue, my knowledge, training and experience and the aforementioned publications and other medical and scientific literature information that I have familiarized myself throughout my medical career, **it is my opinion, within a reasonable degree of medical probability, that the home at 2027 Ridgehill Avenue contained lead-based paint during Patrice Barr's residence from 2000 until 2003 and that deteriorated lead paint at this property was a substantial contributing source of Patrice Barr's lead exposure, elevated blood lead levels, and resulting injury**.

(Emphasis added.)

The circuit court conducted a hearing on appellees' motion for summary judgment on June 13, 2014. The hearing focused primarily on whether appellant had proffered sufficient evidence to show that 2027 Ridgehill Avenue contained lead-based paint. Appellant's counsel noted that appellees had filed no affidavit or other evidence in support of the motion for summary judgment, and therefore, it was appellant's position that she had presented sufficient circumstantial evidence to defeat the motion. In other words, because the appellees' motion for summary judgment had put forth no evidence that appellant *was* in fact

6

exposed to sources of lead outside her home during the period when she was living at 2027 Ridgehill Avenue, it was appellant's position that there was no obligation upon her to rule out any other possible sources of lead exposure during 2001 to 2003.

The circuit court was not persuaded, and granted appellees' motion for summary judgment as to all claims. Appellant filed a motion for reconsideration, which was summarily denied. This timely appeal followed.

## STANDARD OF REVIEW

Summary judgment may be entered "in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Maryland Rule 2-501(f). In the course of reviewing two lead paint cases in which summary judgment had been granted, the Court of Appeals described the applicable standard of appellate review as follows in *Hamilton v. Kirson*, 439 Md. 501, 522-23 (2014) (quotation marks and citations omitted):

> [T]he standard for appellate review of a trial court's grant of a motion for summary judgment is simply whether the trial court was legally correct, and is subject to no deference.
>
> As such, in reviewing a grant of summary judgment, we review independently the record to determine whether the parties generated a dispute of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pled facts against the moving party.

7

That our appellate review is premised on assumptions favoring the non-moving party does not mean that the party opposing the motion for summary judgment prevails necessarily. Rather, in order to defeat a motion for summary judgment, the opposing party must show that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence. Consequently, mere general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment.

The mere existence of a scintilla of evidence in support of the plaintiffs' claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff.

*See also Central Truck Center, Inc. v. Central GMC, Inc.*, 194 Md. App. 375, 386 (2010) (summary judgment is appropriate where a party fails to make a legally adequate showing as to an element for which it bears the burden of proof).

## DISCUSSION

Appellant contends that the circuit court erred by granting summary judgment in favor of appellees because, in her view, she presented sufficient evidence to establish that she was exposed to lead-based paint at 2027 Ridgehill Avenue. The parties agree that there is no direct evidence in the record proving that appellees' property at 2027 Ridgehill Avenue contained lead-based paint, and also agree, at least in principle, that a plaintiff in a lead paint case can prove that a property contained lead paint by producing circumstantial evidence showing that she suffered from lead poisoning while living in the home *and* by presenting evidence that her exposure did not occur elsewhere. The question at the heart of this appeal is whether a lead paint plaintiff who relies on circumstantial evidence to establish the elements of her *prima facie* negligence case — including proof that the defendant's property

8

contained lead paint — has a burden of production to present evidence ruling out any reasonable probability that her elevated blood lead levels were caused by other potential sources of lead exposure. It appears to us that Maryland cases compel us to answer that question "yes."

Relying on *Dow v. L&R Properties*, 144 Md. App. 67 (2002), appellant argues that the affidavits she submitted describing the age and deteriorated condition of the appellees' property, combined with the fact that appellant's blood lead levels went up while she was living at 2027 Ridgehill Avenue, provided sufficient circumstantial evidence to prove that that property contained lead-based paint that was the probable source of her exposure to lead. Appellees, on the other hand, contend that this circumstantial evidence is insufficient, because appellant failed to present any testimony or other evidence ruling out the possibility that she was exposed to some other source of lead during the years she resided at 2027 Ridgehill Avenue. Appellant counters that there is no evidence in the record that affirmatively suggests that her exposure occurred elsewhere, and, she argues, therefore, that she carried her burden, as the non-moving party responding to a motion for summary judgment, of providing facts that could prove by a preponderance of evidence that her exposure to lead occurred at appellees' property.

The plaintiff in a lead paint lawsuit alleging negligence has the burden of proving "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or

injury proximately resulted from the defendant's breach of the duty." *Taylor v. Fishkind*, 207 Md. App. 121, 148 (2012) (quoting *Rosenblatt v. Exxon Co., U.S.A.*, 355 Md. 58, 76 (1994)). To satisfy the causation element of her negligence claim, a lead paint plaintiff "must tender facts admissible in evidence that, if believed, establish . . . that the property contained lead-based paint, and . . . that the lead-based paint at the subject property was a substantial contributor to the victim's exposure to lead." *Hamilton v. Kirson, supra*, 439 Md. at 530. A plaintiff need not present direct evidence showing that the subject property contained lead, and instead "may prove circumstantially that the subject property contained lead-based paint in a number of ways." *Id*. at 537. *See also West v. Rochkind*, 212 Md. App. 164, 175 ("A lead paint plaintiff may, of course, establish a *prima facie* case of negligence based solely on circumstantial evidence."), *cert. denied*, 435 Md. 270 (2013).

In *Hamilton v. Kirson*, the Court of Appeals affirmed the grant of the defendants' motions for summary judgment in two cases (consolidated for appeal) where the plaintiffs sought damages for lead poisoning but had no direct evidence that the defendants' houses contained lead-based paint. Although the appellant in the present case urges us to conclude that *Hamilton* does not support the circuit court's entry of summary judgment for appellees, we interpret the Court of Appeals's opinion as support for the appellees' position with respect to appellant's burden of production.

The Court of Appeals, in *Hamilton v. Kirson*, 439 Md. at 537-38, affirmed the central holdings of this Court's opinions in *Dow* and *West*. The *Hamilton* Court noted that it had

10

referred to "multiple analytical layers" in establishing causation in lead paint cases in *Ross v. Housing Authority of Baltimore City*, 430 Md. 648, 688 (2013), and that it had noted in *Ross* that a plaintiff's proof of causation requires proof of "the link between the defendant's property and the plaintiff's exposure to lead." The Court explained in *Hamilton* that, in cases in which a plaintiff relies on circumstantial evidence to prove this first link ("between the defendant's property and the plaintiff's exposure to lead"), other potential sources of exposure to lead are factors to be considered. The Court stated, 439 Md. at 529-30:

> In the present cases, we are concerned with the first link. To prove this link, circumstantial evidence may be used, "so long as it creates 'a reasonable likelihood or probability rather than a possibility' supporting a 'rational inference of causation,' and is not 'wholly speculative.'" *West*, 212 Md. App. at 170–71, 66 A.3d at 1150 (citations omitted). The Hamiltons' and Alstons' cases hinge on that fine distinction between circumstantial evidence that amounts to a reasonable likelihood or probability and circumstantial evidence that amounts only to a possibility and speculation.
>
> To connect the dots between a defendant's property and a plaintiff's exposure to lead, the plaintiff must tender facts admissible in evidence that, if believed, establish two separate inferences: (1) that the property contained lead-based paint, and (2) that the lead-based paint at the subject property was a substantial contributor to the victim's exposure to lead. At times, these separate inferences may be drawn from the same set of facts, but parties would do well to remember that these inferences are separate and often will require different evidentiary support.

After observing that the plaintiff in *Dow* had offered proof that showed "the child victim spent most of her time at the subject property where she lived *and did not have contact with other possible sources of lead during the relevant period*," *id*. at 531 (emphasis added), in contrast to the proof in the *West* case, where the child "spent substantial amounts

11

of time at a variety of houses," *id.* at 534, the *Hamilton* Court summarized again what a

plaintiff must show when there is no direct evidence that the subject property had lead-based

paint, *id.* at 535-36:

> Reiterating, the necessary two-steps are (1) the plaintiff must show first that the subject property had lead-based paint, and (2) then the plaintiff must show that his or her exposure at the subject property "was an effective cause of his lead poisoning." [*West*, 212 Md. App. at 173.] According to the *West* court, the second step, "[t]he proof of ultimate causation[,] does not demand exclusivity." *Id*. The first step, the **proof that the subject property had lead paint**, **however, does demand exclusivity**. *Id*.
>
> Based on the distinction between the proof required to satisfy these two steps, the *West* court concluded that "where [there was] no direct evidence that [the subject property] even contained lead paint, [West] may only rely on that critical fact, as a necessary part of his circumstantial evidence, if he can show by the process of elimination that [the subject property] was the only possible cause for the critical effect of lead poisoning." *West*, 212 Md. App. at 175, 66 A.3d at 1151. In other words, "[the court] may only infer the existence of lead paint at [the subject property] from [West]'s condition if lead paint at [the subject property] is shown to have been the only possible explanation for [West]'s condition." *Id*.

(Emphasis added.)

The *Hamilton* Court indicated that, although there may be other alternatives for

proving the presence of lead in a house for which the plaintiff has no direct evidence of lead,

in a case in which the plaintiff seeks to rely on the child's elevated blood level as

circumstantial evidence of the existence of lead, other possible sources of exposure must be

ruled out. The Court stated:

> We agree with the *West* court's analysis for application to those cases where a plaintiff relies on a *Dow* theory of causation. **Under a *Dow* theory of causation, a plaintiff must rule out other reasonably probable sources of**

12

**lead exposure** in order to prove that it is probable that the subject property contained lead-based paint. **Where the plaintiff fails to rule out other reasonably probable sources, the necessary inferences for a *Dow* theory of causation cannot be drawn with sufficient validity to allow the claim to survive summary judgment.**

*Hamilton*, 439 Md. at 536-37 (emphasis added). But, "if a plaintiff is able to exclude other reasonably probable sources of lead, such as in *Dow*, then the plaintiff presents a *prima facie* case." *Id*. at 537.

In *Hamilton*, summary judgment in favor of the defendants was upheld because the plaintiffs had not produced evidence to rule out other reasonably probable sources of lead exposure. The Court of Appeals stated, *id.* at 546:

> **Plaintiffs bear the initial burden of proving circumstantially a *prima facie* negligence case**. Part of that burden is to advance a viable theory of causation. In the Alstons' case, they argued a *Dow* theory of causation, but, as the Circuit Court noted, the Alstons failed to produce the quantum or quality of evidence noted in *Dow*, namely, **they failed to eliminate other reasonably probable identified sources of lead exposure**. Thus, the Circuit Court's comparison of the Alstons' case to *Dow* was appropriate and its ultimate conclusion that **the Alstons failed to meet their initial burden** was correct.

(Emphasis added.)

Accordingly, the burden is on the plaintiff to rule out other reasonably probable sources of exposure, and the defendant has no obligation to identify other likely sources of lead in order to trigger a plaintiff's obligation to rule out other reasonably probable sources of exposure. "Where a plaintiff . . . does not produce evidence to support another theory of causation and, instead, relies on **a causation theory similar to that espoused in *Dow*, the validity of the necessary inference **is limited to those circumstances where the plaintiff is**

13

**able also to exclude other reasonably probable sources of lead exposure**." *Id*. at 538

(emphasis added).

Appellant relies primarily on the affidavit of Dr. Levy to rule out other possible sources of exposure to lead. But the *Hamilton* Court rejected the use of similar expert opinion evidence for establishing the presence of lead in a particular place the plaintiff resided. The Court said: "Plaintiffs in the present cases argue that their experts' testimony bridged any evidentiary gap in their circumstantial proof. Specifically, their experts opined that the subject properties were probably a substantial contributor to Plaintiffs' injuries." *Id.* at 538. The *Hamilton* Court quoted with approval this Court's observation that "the mere fact that most old houses in Baltimore have lead-based paint does not mean that a particular old Baltimore house has a similar deficiency." *Id.* at 541 (citations omitted). If a plaintiff's expert reaches "the conclusion that the house contained lead-based paint [based] on a presumption that houses built during a certain time period contain typically lead-based paint" — which is the essence of Dr. Levy's opinion in the present case — then "[s]uch a factual basis is insufficient for an expert to reach the conclusion that the interior of a specific property contained lead-based paint during the relevant time period." *Id.* at 544. *Accord Smith v. Rowhouses, Inc.*, 223 Md. App. 658, 666 (2015). *See also Roy v. Dackman*, 219 Md. App. 452, 473 (2014), *cert. granted*, 441 Md. 217 (2015) (oral argument conducted September 3, 2015), where we held that a pediatrician's opinion that a particular home was the source of the plaintiff's lead exposure "'amounted to no more than speculation'" where

14

there was no direct evidence of lead in the interior of the premises and the pediatrician based his opinion on deposition testimony regarding the presence of "peeling paint," the age of the home, and a test confirming lead paint on the exterior of the house (quoting *City Homes, Inc. v. Hazelwood*, 210 Md. App. 615, 689, *cert. denied*, 432 Md. 468 (2013)).

Our conclusion that appellant was obligated to rule out the existence of other reasonably probable sources of lead exposure is bolstered by this Court's holding in *Dow*. In that case, there was no evidence in the record showing that the plaintiff had been exposed to lead anywhere other than the defendant's property. Nevertheless, in reversing the grant of summary judgment in favor of the defendant, we relied heavily on the fact that the plaintiff's mother had signed an affidavit attesting that the plaintiff "did not spend time anywhere else and was never exposed to other sources of lead." *Dow, supra*, 144 Md. App. at 144. We held that the mother's affidavit, "coupled with the undisputed fact that homes built before 1950 often contain lead-based paint, could indeed support an inference that the paint in question contained lead." *Id*.

Similarly, in *Smith v. Rowhouses, Inc.*, 223 Md. App. at 668, we held that the plaintiff had produced sufficient circumstantial evidence to survive a motion for summary judgment even though there was no direct evidence that the subject property contained lead paint. We noted that the plaintiff in that case had produced evidence that showed she "had her first elevated blood-lead level when she was living at the [defendant's property, and the plaintiff] did not have contact with any other known source of exposure to lead at that time. . . ." *Id*.

15

The lack of other known exposures "could support a reasonable inference by the trier-of-fact that [the defendant's property] was the only *reasonably probable* source of the lead to which [the plaintiff] was exposed before she first tested positive for lead. . . ." *Id*. at 668-69.

In the present case, there was a gap in the circumstantial evidence provided by the appellant. In order for the fact-finder to rationally conclude that the lead level in her blood most likely went up because she was exposed to lead paint in 2027 Ridgehill Avenue, she needed to provide facts from which one could conclude that the appellant was not exposed to other known sources of lead that could reasonably account for the increase lead level in her blood. Such evidence was not included in the material appellant filed in opposition to the appellees' motions for summary judgment. Consequently, we conclude that the circuit court did not err by granting the motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**