REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 993

September Term, 2014

MYISHIA SMITH

v.

ROWHOUSES, INC.

Eyler, Deborah S.,
Meredith,
Berger,

JJ.

Opinion by Eyler, Deborah S., J.

Filed: July 2, 2015

In the Circuit Court for Baltimore City, Myishia L. Smith, the appellant, sued Rowhouses, Inc. ("R.I."), the appellee, for negligence, alleging that she suffered injuries as a result of ingesting lead-based paint inside a property managed by R.I., in which she had lived in the early 1990's. The circuit court granted summary judgment on the basis of causation. On appeal, Smith asks whether that ruling was legally incorrect. For the reasons stated below, we shall reverse the judgment and remand the case to the circuit court for further proceedings.[1]

## FACTS AND PROCEEDINGS

Smith was born on October 21, 1991. According to Smith's mother, Doris Plater, at the time of Smith's birth, they were living in Baltimore City, at 418 South Monroe Street (the "Monroe Street Property"). To Plater's observation, that property was in "good condition."

No later than the spring of 1992, Plater and Smith moved to 1622 East Oliver Street (the "Oliver Street Property").[2] About "three to four months" after they moved in, the paint "started chipping and peeling" on the "[w]indowsills, the banister and baseboards." Plater also saw dust on the floor. Plater frequently saw Smith putting her hands on these areas and then in her mouth. In the spring of 1993, Plater and Smith moved from the Oliver Street Property to 1508 North Collington Avenue (the "Collington Street Property").

---

[1]Smith included in her complaint a count alleging unfair trade practices. The circuit court granted summary judgment on that count as well. Smith does not challenge that ruling on appeal. Accordingly, summary judgment is not being reversed on that claim.

[2]In her deposition, Plater testified that she and Smith moved out of the Monroe Street Property and into the Oliver Street Property in the spring of 1992. In a later filed affidavit, Plater attested that they moved out of the Monroe Street Property and into the Oliver Street Property in "approximately 1991."

While residing at these three properties, Plater took Smith to visit her grandmother at 2017 Ashland Avenue (the "Ashland Avenue Property") "[e]very week" for "[t]wo, three hours."[3] Plater never saw any chipping, flaking, or peeling paint at the Ashland Avenue Property.

As a young child, Smith was tested for lead, with the following relevant blood-lead level results:[4]

| Date | Blood Lead Level |
|---|---|
| 9/25/92 | 11 ì g/dL[5] |
| 5/28/93 | 7 ì g/dL |
| 9/21/93 | 15 ì g/dL |

As noted, the Oliver Street Property was managed by R.I. at the time that Smith was living there. On October 24, 2011, Smith filed suit against R.I.[6] By then, the Oliver Street Property had been razed. There were no lead paint abatement notices for that property or any other documents showing whether or not there was lead-based paint in the property.

---

[3] In their briefs and during oral arguments, the parties disagreed about whether Plater testified that Smith visited the Ashland Avenue Property every week while she resided at the Oliver Street Property. During her deposition, Plater testified that, while residing at the Monroe Street Property, she took Smith to the Ashland Avenue Property "[e]very week." Then, defense counsel asked Plater if she took Smith to the Ashland Avenue Property "every other week like [she did] when [she was] at [the Monroe Street Property]." Plater responded, "Yes." Any dispute concerning this factual issue is not material to the issue on appeal.

[4] Smith also had elevated blood lead levels in 1994 and 1995. Those test results are not relevant to the issue on appeal.

[5] µg/dl stands for micrograms per deciliter.

[6] Smith also included as a defendant the owner of the Collington Avenue Property. She voluntarily dismissed the complaint against that defendant with prejudice.

The parties engaged in discovery and identified expert witnesses. Smith named Robert K. Simon, Ph.D., as an expert in "toxicology, lead risk assessment and industrial hygiene." On October 11, 2013, he prepared a report stating that deed records "showed that the [Oliver Street Property] was built mostly [sic] likely in the early 1900s or before," and that "[t]he age of this house would presume the presence of lead based paint." He opined "to a reasonable degree of scientific probability that [Smith] was . . . exposed to lead based paint hazards during her residence at" the Oliver Street Property.

Dr. Simon's deposition was taken on May 5, 2014. He testified that "in Maryland if your property is built before 1950, then COMAR 26.16 says you presume it contains lead-based paint unless you've tested it to prove it doesn't. . . ."[7] Defense counsel questioned Dr. Simon about the significance of this presumption to his opinions in this case:

> [DEFENSE COUNSEL]: Doctor, you mentioned that you presume that a property contains lead-based paint or contains lead based on its age, particularly if it is built before 1950, correct?
>
> [DR. SIMON]: Correct.

* * *

---

[7]COMAR 26.16.01 is titled "Accreditation and Training for Lead Paint Abatement Services." Regulation .03(A) of that chapter, titled "Applicability of this Chapter," states: "The presence of a lead-containing substance is presumed in any residential building constructed before 1950 unless a person determines that all painted surfaces are lead-free . . . ." Smith does not contend this regulation creates a presumption applicable to lead paint negligence cases. This regulation became effective on August 12, 1996, almost 18 years before the Court of Appeals held in *Hamilton v. Kirson*, 439 Md. 501 (2014), that the age of a property alone is not a sufficient factual basis to support a finding that it contained lead-based paint.

[DEFENSE COUNSEL]: If we take away the age of the property in this case, are you able to make a determination or an opinion that there was lead in the property without having any information about the age if we didn't know that?

[DR. SIMON]: I don't know the answer to that question because if you're taking the age away, then what do I know about the property?

[DEFENSE COUNSEL]: Assuming you have all the other information that you have here today, if you didn't know the age of the property, would you then be able to opine that there was lead or lead-based paint hazards inside [the Oliver Street Property]?

[DR. SIMON]: No. . . .

Dr. Simon also opined that the Oliver Street Property was a "substantial contributing source[]" of Smith's lead exposure. He stated that he based this opinion on the "testimony of deteriorated paint" at the Oliver Street Property, Smith's "hand to mouth activity," and Smith's elevated "blood lead levels" while she was residing at the Oliver Street Property.

R.I. filed a motion for summary judgment. It argued that Dr. Simon's opinion testimony that there was lead-based paint in the Oliver Street Property was not admissible because it lacked an adequate factual foundation; and Smith had no other admissible evidence to show that the Oliver Street Property contained lead-based paint. Without evidence that there was lead-based paint at the Oliver Street Property, Smith could not prove causation, *i.e.*, that negligence on the part of R.I. was a substantial contributing factor to her injuries.

Smith filed an opposition in which she asserted that there was a genuine dispute of material fact precluding the grant of summary judgment. She attached an affidavit by Plater

4

in which Plater attested that while she and Smith were living at the Oliver Street Property, Smith "occasionally visited her grandmother at [the Ashland Avenue Property]" but Plater "never saw chipping, peeling or flaking paint at [that] property." Plater further attested that when they were living at the Oliver Street Property, Smith "had no contact with old battery casings, lead figures, painted toys, plastic jewelry, naval paint, bullets, fishing weights, ceramic pottery, folk medicine or any other source of lead."

The court held a hearing on R.I.'s summary judgment motion on June 27, 2014. Following arguments of counsel, the court granted summary judgment in favor of R.I. It ruled that Dr. Simon's opinion that there was lead-based paint in the Oliver Street Property, based solely on the age of the property, was not adequate to prove the presence of lead-based paint at that property. The court further ruled that Smith did not otherwise have circumstantial evidence that the Oliver Street Property was "a source of lead exposure in this case."

On July 2, 2014, the court entered an order granting summary judgment in favor of R.I. Smith filed a timely notice of appeal.

We will include additional facts as necessary to our discussion.

## STANDARD OF REVIEW

Summary judgment may be granted when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2-501(f). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Kirson*, 439 Md. at 522 ("[T]he standard for appellate review of a trial court's grant of a motion for

summary judgment is simply whether the trial court was legally correct, and is subject to no

deference." (citations and internal quotation marks omitted)).

> As such, in reviewing a grant of summary judgment, we review independently the record to determine whether the parties generated a dispute of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-plead facts against the moving party.

*Id*. (citations omitted). "[I]n order to defeat a motion for summary judgment, the opposing

party must show that there is a genuine dispute as to a material fact by proffering facts which

would be admissible in evidence." *Id*. at 522-23 (citation omitted).

## DISCUSSION

The parties agree that there is no direct evidence to show that there was lead-based

paint at the Oliver Street Property. Smith contends the circuit court erred in granting

summary judgment in favor of R.I. because she had adequate admissible circumstantial

evidence that there was lead-based paint in the Oliver Street Property. Therefore, "there is

a genuine dispute of fact regarding whether [the Oliver Street Property] caused [her elevated]

blood-lead levels." R.I. responds that "[t]here can be no dispute of fact here because [Smith]

completely failed to establish the necessary predicate that [the Oliver Street Property]

contained lead-based paint."

## I.

We first consider whether the circuit court was legally correct in ruling that Dr.

Simon's opinion that there was lead-based paint inside the Oliver Street Property lacked an

6

adequate factual foundation, and therefore would not be admissible at trial. *See* Md. Rule 5-702 (In determining whether "[e]xpert testimony may be admitted, in the form of an opinion or otherwise, . . . the court shall determine . . . whether a sufficient factual basis exists to support the expert testimony.").

To prove the causation element of negligence in a lead paint case, the plaintiff must introduce evidence to show "(1) that the property contained lead-based paint and (2) that the lead-based paint at the subject property was a substantial contributor to the [plaintiff's] exposure to lead." *Kirson*, 439 Md. at 529-30. In his deposition, Dr. Simon opined: 1) that the Oliver Street Property contained lead-based paint; and 2) there was chipping and peeling paint at the Oliver Street Property, so the lead-based paint at that property was a "substantial contributing source[]" of Smith's lead exposure. As Dr. Smith acknowledged, the sole basis for his opinion that the Oliver Street Property contained lead-based paint was his presumption that, because the Property was built before 1950, it contained lead-based paint.

The presence of lead-based paint inside a property may not be proven based upon the age of the property alone. The *Kirson* Court explained that an expert witness may not base his

> conclusion that [a particular] house contained lead-based paint on a presumption that houses built during a certain time period contain typically lead-based paint. Such a factual basis is insufficient for an expert to reach the conclusion that the interior of a specific property contained lead-based paint during the relevant time period.

439 Md. at 544. *See also Hamilton v. Dackman*, 213 Md. App. 589, 612 (2013) ("'[T]he mere fact that most old houses in Baltimore have lead-based paint does not mean that a

particular old Baltimore house has a similar deficiency.'" (quoting *Davis v. Goodman*, 117 Md. App. 378, 393 (1997))).

Dr. Simon's opinion that there was lead-based paint inside the Oliver Street Property rested solely on an inadequate factual foundation. Therefore it was not admissible, and the circuit court correctly ruled that it could not be used to prove causation.

## II.

Smith contends that, even without Dr. Simon's testimony, there was sufficient admissible circumstantial evidence to permit a reasonable fact-finder to infer that the Oliver Street Property "was the only possible source of her lead exposure," and therefore there was lead-based paint at that property.

R.I. counters that "the circumstantial evidence produced [by Smith]" was legally insufficient to prove causation. Specifically, her evidence could not support a reasonable inference "(i) that [the Oliver Street Property] contained lead-based paint; and (ii) that the lead-based paint at [the Oliver Street Property] was a substantial contributor to [Smith's] exposure to lead."

Smith maintains that the facts here are "closely analogous to the facts of" *Dow v. L&R Properties, Inc.*, 144 Md. App. 67 (2002). In *Dow*, the plaintiff was claiming that she had been exposed to lead-based paint while living at 1237 Myrtle Avenue, a property managed by the defendant. The defendant did not dispute that the Myrtle Avenue Property "was in existence as early as 1935," that the plaintiff had consumed paint chips there, and that the plaintiff was diagnosed with lead poisoning while residing there. *Id.* at 75-76. It moved for

8

summary judgment, however, on the ground that "there was no evidence that lead based paint existed" in the Myrtle Avenue Property. *Id*. at 70 (internal quotation marks omitted). In opposition, the plaintiff submitted an affidavit by her mother, who attested that the plaintiff "spent virtually all of the relevant time at" the Myrtle Avenue Property and "could not have been exposed to lead anyplace else." *Id*. at 75. The circuit court granted the summary judgment motion.

On appeal, this Court reversed. We held that the affidavit, "coupled with the undisputed fact that homes built before 1950 often contain lead-based paint, could indeed support an inference that the paint in question contained lead." *Id.* 76. "Viewing the circumstantial evidence and the inferences that could be drawn therefrom in the light most favorable to" the plaintiff "could properly establish that the paint in question was lead based and thus caused [her] alleged injuries." *Id*. at 74-75.

Recently, in *Kirson*, the Court of Appeals endorsed the *Dow* method of proving causation. 439 Md. 501. It explained that, if "a plaintiff relies on a *Dow* theory of causation . . . , [she] must rule out other reasonably probable sources of lead exposure in order to prove that it is probable that the subject property contained lead-based paint." *Id*. at 536.[8]

---

[8]The *Kirson* Court made clear that the *Dow* method is not the only way to use circumstantial evidence to prove that the property in question contained lead-based paint. For example, evidence that the property was a row house sharing common walls with two adjacent row houses that were built at the same time by a common owner, and both of which contained lead-based paint, could support a reasonable inference that the property in question also contained lead-based paint. *Id.*

We return to the case at bar. The evidence on the summary judgment record, when viewed in the light most favorable to Smith, showed that there was admissible evidence to prove the following facts: (1) from not long after her birth and for the next year, Smith spent the majority of her time at the Oliver Street Property, which contained peeling, chipping, and flaking interior paint; (2) the Monroe Street Property, where Smith lived before moving to the Oliver Street Property, was in "[g]ood condition," meaning that it did not have the peeling, chipping, or flaking interior paint that later was seen at the Oliver Street Property;[9] (3) the Ashland Avenue Property, which Smith visited frequently, did not have peeling, chipping, or flaking interior paint; (4) while living at the Oliver Street Property, Smith often was seen with her hands on interior areas that had peeling, chipping, and flaking paint and then with her hands in her mouth; (5) Smith had her first elevated blood-lead level when she was living at the Oliver Street Property; (6) Smith did not have contact with any other known source of exposure to lead at that time; and (7) the Oliver Street Property was built before 1950. Under *Kirson* and *Dow*, this evidence could support a reasonable inference by the trier-of-fact that the Oliver Street Property was the only *reasonably probable* source of the lead to which Smith was exposed before she first tested positive for lead on September 25, 1992. Because there was adequate circumstantial evidence on the summary judgment record to show the presence of lead-based paint in the Oliver Street Property when Smith was living

[9]At deposition, when asked about the condition of the Monroe Street Property, Plater stated that it was in "[g]ood condition." Shortly thereafter, she was asked about the condition of the Oliver Street Property, and responded that it had "[ch]ipping and peeling paint" inside. In this context, it is reasonable to infer from Plater's testimony that there were no paint defects at the Monroe Street Property.

10

there, summary judgment should not have been granted in favor of R.I. on the negligence count.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY ON NEGLIGENCE COUNT REVERSED. JUDGMENT OTHERWISE AFFIRMED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.**