*Kirson v. Johnson*
No. 1861, September Term 2016
Opinion by Nazarian, J.

**HEADNOTES**

PLAINTIFF'S BURDEN OF PROOF OF A SUBSTANTIAL FACTOR

A lead-paint plaintiff is not required to prove that lead from a specific place within a property contributed substantially to his or her injuries. Rather, a plaintiff is required to produce evidence from which a jury can find that lead-based paint was present at the property and that exposure from the lead in that property substantially contributed to his or her related injuries.

NOTICE OF HOUSING CODE VIOLATIONS

A tenant is not required to show that a landlord had notice of Baltimore City Housing Code violations in order to establish a prima facie case of negligence in a lead-based paint case.

Circuit Court for Baltimore City
Case No. 24-C-14-005926

_____

BENJAMIN L. KIRSON, *et al.*

v.

DEVON JOHNSON

_____

Kehoe,
Nazarian,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.
_____

Filed:  April 2, 2018

Devon Johnson sued his former landlords, Benjamin L. Kirson, individually and as trustee of assets of BenLee Realty, LLC (collectively the "Landlords"), in the Circuit Court for Baltimore City. He alleged that he had been poisoned by lead-based paint during the time he lived in a home that the Landlords owned and managed. At the close of Mr. Johnson's case, the Landlords moved for judgment, and the trial court denied the motion. After a six-day trial, a jury returned a verdict in Mr. Johnson's favor and awarded damages in the amount of $1,628,000.

The Landlords moved for judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial, and moved to reduce the amount of non-economic damages. The trial court denied their JNOV motion but reduced the non-economic damages to $1,173,000. The Landlords appeal and we affirm.

## I. BACKGROUND

Mr. Johnson was born on April 18, 1997 at Union Memorial Hospital. From December 1997[1] until February 2000, he lived with his mother, Varnell Thames, at 741 E. 36th Street ("36th Street" or the "Property") in Baltimore City. 36th Street was owned and managed by BenLee Realty, LLC, of which Benjamin Kirson was a member. Mr. Kirson managed the day-to-day operations of the company and oversaw its properties, including 36th Street. Before Ms. Thames rented the Property, she performed a walk-through inspection with an unidentified man who handled the execution of her lease.

---

[1] Mr. Johnson and his mother lived briefly in another property before they moved to 36th Street. There is no indication that lead-based paint was found in that home.

Ms. Thames testified that when she moved into the home, she saw chipping paint on the window sills in the basement and bedrooms and on the front porch door. Mr. Johnson and his brother often played in the basement, on top of the washing machine, especially while it was running, and on the front porch during the summer. She testified that she saw paint chips on Mr. Johnson's fingertips and on the bottom of a bottle of bleach that sat on the window sill behind the washing machine in the basement.

Mr. Johnson's blood was tested eight times for lead between August 1998 and January 2012, and the tests revealed elevated blood lead levels four times between the time he lived at 36th Street and the time he moved away:

| Date Taken | Blood Lead Level[2] |
|---|---|
| August 17, 1998 | 16 µg/dL |
| October 27,1998 | 16 µg/dL |
| March 18, 1999 | 17 µg/dL |
| April 22, 1999 | 13 µg/dL |

In 2014, Ms. Thames, on Mr. Johnson's behalf, sued the Landlords in the Circuit Court for Baltimore City, alleging negligence and unfair trade practices in violation of the Maryland Consumer Protection Act ("CPA"). During discovery, Arc Environmental ("Arc") tested 36th Street for lead-based paint and issued a report (the "Report") identifying six areas of the Property that contained lead in excess of the Maryland standard.[3] The

---

[2] Blood lead levels are measured in micrograms per deciliter (µg/dL) of blood. *See Standard Surveillance Definitions and Classifications*, Centers for Disease Control and Prevention, https://www.cdc.gov/nceh/lead/data/definitions.htm (last updated Nov. 18, 2016). As of 2012, the Centers for Disease Control and Prevention consider blood levels greater than 5 µg/dL to be elevated. *Id.*

[3] According to the Arc Report, a component is classified as testing positive for the presence of lead where the reading is greater than or equal to 0.8 mg/cm$^2$. The areas in 36[th] Street identified had readings as high as 9.1 mg/cm$^2$.

Report identified lead-based paint in the rear exterior of the Property's basement door casing, the window casing in the basement, the front door's casing and threshold, and the front porch's post and header.

Mr. Johnson designated two experts: (1) Dr. Paul Rogers, a pediatrician who specializes in neurodevelopmental disabilities in children, as an expert witness to testify on the source of his lead exposure (source causation) and the cause of his injuries (medical causation); and (2) Edward Rush Barnett, an accredited lead risk assessor, as an environmental safety and health expert to testify on the presence of lead-based paint hazards at 36th Street. In his December report, Dr. Rogers concluded that "[Mr. Johnson] had extensive exposure to lead based paint at [36th Street] that caused his elevated blood levels and subsequent poisoning and was a substantial contributing factor to his neurodevelopmental disabilities." He based his opinion on a variety of documents, including: (1) Mr. Johnson's medical and school records, blood lead test results, and neuropsychological evaluation; (2) the age of the Property, which was built in 1927; (3) Maryland Department of the Environment ("MDE") records indicating 36th Street is registered with its lead paint prevention program;[4] (4) Ms. Thames's affidavit, which described flaking, chipping, and peeling paint in the Property; and (5) the Arc Report. In contrast, during his deposition, Dr. Rogers testified that he couldn't say that, each taken individually, the rear exterior basement door and window casing, front exterior door's

---

[4] Maryland law requires all leased properties built before 1950 to be registered. *See* MD. CODE ANN., ENVIR. §§ 6-801; 6-811; *see also Dow v. L & R Properties, Inc.*, 144 Md. App. 67, 74 (2002) (no statutory provision expressly creates an evidentiary presumption that any residential rental property in Maryland constructed before 1950 has lead-based paint).

casing and threshold, and front porch's post and header contributed substantially to Mr. Johnson's injuries. But at trial, Dr. Rogers testified again that "the aggregate dust production from these several sources . . . and what was tracked in the house [ ] more likely than not contributed to [Mr. Johnson's] elevated lead levels" and subsequent injuries. Mr. Barnett also testified that the deteriorating paint conditions of the lead-based paint at the Property contributed to Mr. Johnson's elevated lead levels.

The Landlords moved *in limine* to preclude Mr. Johnson from presenting evidence or eliciting testimony about parts of the Property not identified in the Report, and to preclude Dr. Rogers from opining that the basement window casing alone was a "substantial factor" in causing Mr. Johnson's injuries. The court granted both motions. After a six-day trial, the jury found the Landlords liable and awarded damages totaling $1,628,000. After the circuit court denied the Landlords' motion for JNOV and reduced the non-economic damages portion of the award, the Landlords appealed. We will supply additional facts as appropriate below.

## II. DISCUSSION

The Landlords raise four issues in their brief[5] that we have consolidated into two. *First*, they challenge the trial court's denial of their motions for judgment and JNOV

---

[5] The Landlords phrased their Questions Presented in their brief as follows:

I.      Whether the Trial court committed legal error and/or abused its discretion when it denied Appellant's Motion for Judgment Notwithstanding the Verdict/New Trial when there was insufficient evidence that the subject property was a substantial factor regarding Appellee's lead levels and alleged injuries?

4

because, they contend, Mr. Johnson failed to establish the lead-based paint found at 36th Street contributed substantially to his injuries. *Second*, they challenge the court's decision not to adopt their proposed jury instructions or special verdict sheet, which would have instructed the jury to find specifically, as an element of their duty, that they had notice of a defective condition as defined in the Baltimore City Housing Code (the "Housing Code").

### A. The Evidence Supported The Circuit Court's Denial Of The Landlords' Motions for Judgment.

The Landlords contend *first* that the circuit court erred by denying their motions for judgment and JNOV, or in the alternative, their motion for a new trial. They claim that Mr. Johnson failed to satisfy his burden of proving that the condition of the paint at the Property was a "substantial factor" of his alleged injuries. We review the trial court's denial of a motion for judgment or JNOV for legal error, viewing the evidence in the light most favorable to the non-moving party. *Scapa Dryer Fabrics, Inc. v. Saville*, 418 Md. 496, 503 (2011). We will affirm the lower court's denial of the motion if there is any evidence, no matter how slight, legally sufficient to generate a jury question. *Washington Metro. Area*

---

II. Whether the Trial court committed legal error when it failed to read Appellant's proposed instructions regarding substantial factor causation to the jury?

III. Whether the Trial court committed legal error when it failed to provide the jury with Appellant's proposed special verdict form setting forth the requirements for substantial factor causation to the jury?

IV. Whether the Trial court committed legal error by rejecting notice of a defective condition as a factor in determining Appellant's duty to Appellee under the Housing Code?

5

*Transit Auth. v. Reading*, 109 Md. App. 89, 94 (1996). And we review a trial court's denial

of a motion for new trial for abuse of discretion. *Miller v. State*, 380 Md. 1, 92 (2004).

The battle lines in this case have been drawn around the extent to which Mr. Johnson

was required to prove that the lead from specific places within the Property contributed

substantially to his injuries. The Landlords focus on individual sites, and argue that

evidence and testimony placing chipped paint and paint dust at the house fail to place those

hazards in the specific parts of the property Mr. Johnson inhabited when the family lived

there. In denying the Landlords' dispositive motions, the circuit court viewed his burden

and the evidence more holistically:

> With respect to the issue as to failure to establish that the interior and exterior were substantial contributing factors to Mr. Johnson's elevated blood lead level and injuries, I'm going to deny the motion on that basis.
>
> I do think that -- I appreciate, in all candor, I think that [Landlords' counsel] did an excellent job on cross-examination -- but I think that Dr. Rogers said that the home as a whole was a substantial contributing factor to the injuries that Mr. Johnson seeks to recover for here in this trial.
>
> And the aggregate effect of the deteriorating conditions was a substantial contributing factor according to the expert testimony generally put on by [Mr. Johnson].
>
> \* \* \*
>
> I have to focus on this issue of the basement window casing versus the sill. I think this puts too fine a point on an issue on the distinction which was based at least primarily at the front end on a layperson's use of the terminology, Ms. Thames' description of what she witnessed, her son engaging, and the condition of the window as a general matter in the basement.

> I think the inference is reasonable that the chipping, flaking, peeling paint was on the interior of the basement window casing versus just the sill, if I've got that correct. And I think it's splitting hairs to a degree that is unreasonable as far as what a jury is entitled to consider in the light, at this juncture, most favorable to [Mr. Johnson].

The general legal principles are not in dispute. To prove causation in a lead paint case, a plaintiff must prove that the defendant's negligence was a substantial factor in causing the plaintiff's injury. *See, e.g.*, *Bartholomee v. Casey*, 103 Md. App. 34, 56 (1994). The question is how specifically the plaintiff must connect lead from specific portions of the house to the lead in his blood. The Landlords, citing *Bartholomee* and *Johnson v. Rowhouses*, 120 Md. App. 579 (1998), frame this as a notice issue: they argue that they didn't have notice of deteriorating paint conditions in a *specific* portion of the house—which here requires that they rise to a violation of the Housing Code, since there was no formal notice—therefore they can't be liable for any lead exposure that occurred there. They argue as well that the Housing Code's prohibition of defective conditions applies only to interior surfaces, and that both *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003) and section 703 of the Housing Code concern only deteriorated lead-based paint found *inside* a property, not outside.[6] Therefore, they say, they were entitled to judgment unless

---

[6] The Landlords read too much into *Brooks* when they claim that deteriorated paint on exterior surfaces can't, as a matter of law, constitute notice of deteriorated conditions in the property. 378 Md. at 72–73. In interpreting the language of the Code itself, the Court of Appeals determined that the Code created a "*continuing* duty to keep the dwelling free of flaking, loose, or peeling paint, *at all times*." *Id.* at 84 (emphasis in original). Nothing in the Court's opinion limits this duty to the interior of the property. Moreover, § 706 of the Code mandates that all *exterior* portions "shall be cleaned and freed of flaking, loose or defective surfacing materials." And both we and the Court of Appeals have, where the facts supported it, found evidence of interior and exterior lead sufficient to establish the source

7

Mr. Johnson could connect the lead in his blood to paint that chipped or flaked at specific places *inside* the Property, a burden he didn't meet.

We agree with the circuit court, though, that Mr. Johnson wasn't required to prove the connection to that degree of granularity. To be a substantial factor in causing Mr. Johnson's injuries, lead from the Property must have been a source of Mr. Johnson's exposure to lead, and the associated increase in blood levels must have been substantial enough to contribute to his injuries. *See Ross v. Housing Auth. of Baltimore Cty.*, 430 Md. 648, 668 (2013). Put another way, Mr. Johnson had to produce evidence from which a jury could find that lead-based paint was present at the property and that he was exposed to it there.

And he did. Both of Mr. Johnson's expert witnesses identified 36th Street as the source of Mr. Johnson's exposure to lead. They both relied on the Arc Report results, which served as direct evidence that lead was present inside and outside. They relied on Ms. Thames's testimony that chipping and flaking paint was present in the areas where Mr. Johnson often played, and that she had observed paint chips on Mr. Johnson's hands after he had played in the basement. Unlike *Bartholomee*, there are no other possible sources of lead exposure: the home in which Mr. Johnson had resided previously did not test positive for lead-based paint. And unlike *Rowhouses*, Dr. Rogers *did* opine that

---

and cause of the plaintiff's blood lead levels and injuries. *See e.g.*, *Rogers v. Home Equity USA, Inc.*, 453 Md. 251, 260 (2017) (property tested positive for lead-based paint on the front porch, front door frame, and an exterior window); *Davis v. Goodman*, 117 Md. App. 378, 389 (1997) (property tested positive for lead-based paint only on the exterior front wall of the house, basement windows, left and right front windows, and the front door).

Mr. Johnson's exposure to lead found at 36th Street contributed substantially to his injuries. Unlike both *Bartholomee* and *Rowhouses*, then, the jury in this case was not left to speculate as to the causation issue. *Id.*

It was up to the jury to decide, as a matter of fact, whether this evidence proved that the deteriorated condition at 36th Street was a substantial contributing factor in his injuries, and it's not our role to second-guess its judgment here. *Owens-Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 521 (1996). Therefore, "[e]ven if a jury verdict is 'inconsistent' in the sense that certain findings of fact cannot logically be reconciled with each other, we will normally not reverse a jury's verdict." *Garrett*, 343 Md. at 521 (cleaned up). Viewing the evidence in the light most favorable to the non-movant, though, we discern no error in the trial court's denial of the motions for judgment.

*Second*, the Landlords argue Mr. Johnson failed to prove that the Landlords had notice of the deteriorated paint on the Property's exterior. Mr. Johnson responds that the Housing Code created a duty for the Landlords to inspect and maintain their rental property, and, in any event, that the Landlords had notice of the deteriorating exterior paint. The Landlords rely on *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661 (1994), a case overruled by *Brooks*, 378 Md. 70 (2003), and contend that the Court of Appeals's decision in *Brooks* abrogates their common law rights and violates the Maryland Declaration of Rights.

Of course, as an intermediate appellate court, this isn't our decision to make. Even if it were, we are not persuaded. In *Brooks*, the Court held that a tenant is not required to prove that a landlord had notice of Housing Code violations in order to establish a *prima*

9

*facie* case of negligence. 378 Md. at 84–85. "[A]ll that a plaintiff must show is: (a) the violation of a statute or ordinance designed to protect a specific class of persons which includes the plaintiff, and (b) that the violation proximately caused the injury complained of." *Id.* at 79. And "[w]here there is evidence that the violation of the statute proximately caused the plaintiff's injury, evidence of such violation is sufficient evidence to warrant the court in submitting the case to the jury on the question of the defendant's negligence." *Id.* (internal quotations and citations omitted). Based on the language of the Housing Code, the Court held that the presence of flaking, loose, or peeling paint was a violation; the Code made no distinction between the interior and exterior of the property. *Id.* at 89.

The evidence met this threshold. At trial, Mr. Kirson testified that he routinely inspected the Property for Code violations, and that he "probably inspected the [P]roperty four or five times" while Ms. Thames and Mr. Johnson lived there. He also testified that he knew the Property was built before 1950 and that the law required him to register the Property with MDE and have it inspected for lead. "A landlord is charged with knowledge of the condition of the premises that a reasonable inspection would disclose." *Forrest v. P & L Real Estate Investment Co.*, 134 Md. App. 371, 395 (2000); *see also Benik v. Hatcher*, 358 Md. 507, 533 (2000) (explaining that "the law presumes the existence of a condition that a reasonable inspection, had it been conducted would have uncovered").

It's true that Ms. Thames never informed the Landlords of the presence of chipping and flaking paint at the Property. But although there was evidence that the Property was painted before it was occupied, that it was full lead risk-reduction certified, and that the Landlords inspected it before renting it, there was also evidence from which the jury could

10

have found that there was chipping and flaking paint in the Property while Mr. Johnson resided there—Mr. Johnson's elevated blood lead levels, Ms. Thames's testimony that she saw chipping and flaking paint in the Property and on Mr. Johnson's hands, and the Arc Report results finding lead-based paint in the areas Mr. Johnson often played. "Which of the various factual scenarios to accept was for the jury to determine," *Benik*, 358 Md. at 534, and we see no abuse of discretion in the trial court's denial of the Landlords' motions for judgment or JNOV.

**B.** **The Trial Court Did Not Abuse Its Discretion In Declining To Adopt The Landlords' Proposed Jury Instructions or Special Verdict Sheet.**

*Finally*, the Landlords maintain the trial court erred when it declined to give their custom jury instructions regarding "substantial factor" causation and the notice requirement for violations of the Housing Code. We will not disturb a trial court's decision to grant or deny a party's proposed jury instruction so long as the instructions given correctly state the law, are generated by the evidence at trial, and fairly cover the law. *Benik*, 358 Md. at 519. Similarly, the decision to submit a special issue to the jury lies soundly within the trial court's discretion, Md. Rule 2-522(c), and we will not reverse absent an abuse of discretion. *See Garlock, Inc. v. Gallagher*, 149 Md. App. 189, 201–02 (2003) ("[T]he court's crafting of the special verdict form [is] discretionary. Thus, we would have to find something very wrong with it to reverse the judgment.").

In this case, the trial court properly denied the Landlords' request to give additional jury instructions explaining the term "substantial" and requiring Mr. Johnson to prove that they had notice of the deteriorated conditions at the Property. The Landlords contend, citing

*Bartholomee* again, that because the verdict sheet asked the jury to determine whether lead-based paint at the Property was a substantial contributing factor to Mr. Johnson's injuries, they were entitled to a jury instruction defining the term "substantial." In denying their motion for a new trial, the trial court explained that the Landlords "conflate[d] instructing the jury on the 'substantial factor' rule (*Bartholomee*, 103 Md. App. at 56) with instructing the jury on how to determine whether it has been met, *i.e.*, . . . instructing what the term substantial mean[t]." Further, the court reasoned, "[r]ecitation of the substantial factor test —*i.e.*, instructing the jury that where the conduct of a defendant is a substantial factor in bringing about the suffering of an injury such conduct will be deemed to have caused the injury—is not equivalent to instructing a jury *how to determine* whether it has been met." We agree. *Bartholomee* does not require the court to instruct the jury on which facts are sufficient to satisfy the substantial factor test—that is precisely what the jury is charged with determining from the evidence admitted at trial. And the Landlords' proposed instruction requiring Mr. Johnson to prove the Landlords had notice of deteriorated paint at the Property was not a correct statement of law—it conflicted with the Court of Appeals's holding in *Brooks*, 378 Md. at 84–85 (a tenant is not required to show that the landlord had notice of housing code violations to establish a *prima facie* case of negligence).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANT TO PAY COSTS.**

12